O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|

| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. |
|---|---|

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**          IN CHAMBERS (No Proceedings Held)


Plaintiff Eden Surgical Center ("Eden") is an ambulatory surgery facility located in Los Angeles County, California.  (SUF ¶ 4.)  Defendant Budco Group, Inc. ("Budco") maintains a group employee welfare benefit plan (the "Plan") for Budco's employees. (*Id*. ¶ 1.)   Budco is the "Plan Administrator" for the Plan.  (*Id*. ¶2.)   Blue Cross Blue Shield of Ohio ("BCBSO") is the claims administrator for the Plan.  Eden filed this lawsuit against Budco on June 4, 2009, alleging that Budco failed to disclose documents, records, and other information relevant to an adverse benefits determination after Eden requested such materials, in violation of the statutory disclosure and penalty provision set forth in the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(A).  Eden now moves for summary judgment.  For the following reasons, the Court GRANTS Eden's motion.[1]

## I.     FACTS

In February of 2009, Eden verified with BCBSO that Elisabel Uribe was a covered beneficiary under the Plan.  (SUF ¶ 9.)[2]  Based upon coverage information and

---

[1] Docket No. 19.

[2] Budco purports to dispute this fact and numerous others on the ground that Budco "does not have sufficient information to evaluate plaintiff's contention."  Where, as here, Eden has provided evidence supporting its contention and Budco provides no additional grounds for objection, the Court will accept the fact as undisputed.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

representations provided by BCBSO, Eden provided medical services to Ms. Uribe on February 19, 2009 and March 19, 2009.  (*Id*. ¶ 12.)  Following the provision of these medical services, Eden submitted two separate claims to BCBSO for reimbursement of the Facility Fees[3] incurred during each medical procedure.  (*Id*. ¶ 13.)  The claim for fees incurred on February 19, 2009 totaled $33,379.69, and the claim for fees incurred on March 19, 2009 totaled $43,322.11.  (Eden's Compendium of Exhibits ["Eden's Compendium"], Exh. 4.)  BCBSO subsequently reimbursed Eden for $2,016 on the two claims ($1,008 on each claim).  (*Id*., Exh. 5.)

On March 24, 2009, Eden sent Budco a written demand to produce the contracts, agreements and documents under which the Plan is established and/or operated including, but not limited to, the Summary Plan Description ("SPD"), the administrative contract(s) between Budco and BCBSO, and documents, records, and other information "relevant to the processing and re-pricing of the subject adverse benefit determinations."  (SUF ¶ 16; Reich Decl. ¶ 19; Budco's Compendium of Exhibits ["Budco's Compendium"] Exh. 1.)  In the letter, Eden accused BCBSO of manipulating the reimbursement rates, accused Budco of numerous ERISA violations, and threatened legal action. (*Id*.)  Eden also stated that it had received an "electronic message" (on an unspecified date) from Amber Shropshire, an "operations expert" in the Blue Cross of California National Accounts office, who stated that Blue Cross would be reimbursing Eden for 100% of the charges billed on February 19, 2009.  (Budco's Compendium, Exh. 1 at p. 3.)

On April 24, 2009, Budco responded to Eden's March 24, 2009 letter.  (Budco's Compendium, Exh. 2.)  In this response, Budco construed Eden's March 24, 2009 letter as an appeal of its benefit determination, and informed Eden that it was denying the appeal.  (Budco's Compendium, Exh. 2.)  In the letter, Budco purported to explain how it came to the benefits determination regarding Ms. Uribe's claim, stating:

The Maximum Amount Allowable under the Plan for Non-Network Ambulatory

---

[3] A "Facility Fee" is the sum of the itemized charges for the surgical equipment, supplies and time used during a given surgical procedure.  A claim for such fees is different from individual physician or ancillary service claims submitted by professional medical providers (such as a surgeon, anaesthesiologist, etc.) for their professional services.  (SUF ¶¶ 6-7.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

Surgical Center claims is established pursuant to the Ohio Non-Network Ambulatory Surgical Center fee schedule. This fee schedule is based on one or more of the factors listed in the Plan language cited above[—industry cost, peer reimbursement, utilization data, previously negotiated rates, and outstanding offers that the Administrator may have made, or other factors the Administrator, on behalf of the Employer, deems appropriate].

(*Id*. at pp. 3-4.) Budco also stated that it had no record of Eden's purported communication with Amber Shropshire.

On April 30, 2009, Eden emailed Budco, demanding the (1) "Administrative Service Agreement between Budco and its claims administrator, as well as any contractual relationships between BCBSO and any claims repricing entity," (2) the "data base and the fee schedule used by BCBSO in reaching the adverse benefit determination(s)," and (3) the "specific methodology used in calculating benefits with respect to the claims at issue, including but not limited to the material necessary to provide a full and fair review . . ." (Budco's Compendium, Exh. 3 at pp. 3-4.)

On May 6, 2009, in response to Eden's April 30, 2009 email, Budco[4] sent Eden a letter stating that it would provide Eden with the database and fee schedule used in determining the benefits payable under the Plan. (Budco's Compendium, Exh. 4 at p. 2.) Budco also enclosed an electronic recording of the "verification process" that took place between Dr. Reich, who was Eden's Associate Medical Director, and an Anthem claims representative on February 11, 2009.[5] (*Id*.) Budco stated that the Plan Administrator relied upon this conversation in evaluating Eden's appeal of the claim.

On May 12, 2009, Eden responded via email to Budco's May 6, 2009 letter. (Budco's Compendium, Exh. 5.) Eden reiterated its accusations of fraudulent misrepresentation that were included in its March 24, 2009 letter, and stated: "Before this matter becomes prohibitively expensive for the Plan . . . it appears prudent to consider

---

[4] The correspondence was from the law firm Dinsmore & Shohl LLP, on behalf of Budco.

[5] Neither the letter nor the parties describe the contents of the conversation.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|----------|---------------------|------|--------------|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

resolving this matter extra-judicially." (*Id*. at 1.)  Eden did not identify any specific documents that it sought from Budco.

On May 29, 2009, Budco's counsel sent Eden another letter and additional documents, including "screen shots identifying that the billed [code] for Ms. Uribe's February 19, 2009 claim falls into level 5 of the grouper system," and another "screen shot [that] shows the payment amount for group level 5." (Budco's Compendium, Exh. 6 at p. 1.)  In the letter, Budco's counsel stated it did not believe ERISA required it to provide this information, but that Budco was nonetheless submitting the information to facilitate a resolution of the matter. (*Id*.)

In sum, the information that Budco indisputably provided to Eden between March 24, 2009 and May 29, 2009 included: the SPD, the Administrative Services Agreement, the Anthem Members Handbook, "screen prints" of codes and re-pricing data, and a voice recording of the verification process that took place between Eden and a BCBSO agent on February 11, 2009.  (SUF ¶ 17; Eden's Compendium Exhs. 7-10.)

On June 3, 2009, Eden sent Budco a letter confirming it received the May 29, 2009 letter and attachments.  (Budco's Compendium, Exh. 7.)  In the letter, Eden stated that it did not find Budco's document production to be sufficient.  Eden stated that it believed Budco was continuing to play "hide the ball," but Eden did not specify any documents that it wanted Budco to produce.  (*Id*.)

On June 4, 2009, Eden filed the present action.  Eden now moves for summary judgment on its sole cause of action for an award of the statutory penalty due under 29 U.S.C. § 1132(c) for Budco's alleged failure to produce "all Operating Plan Documents" requested by Eden in accordance with 29 U.S.C. § 1024(b)(4) and 29 C.F.R. 2560.503-1, paragraphs (g), (h) and (m).

## II.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *see also Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

### B.    ERISA's Disclosure Requirements

Two separate ERISA provisions contain disclosure requirements. The first, which governs the documents that must be filed with Secretary of Labor and documents that must be furnished to plan participants, is contained in 29 U.S.C. § 1024. Subsection (b)(4), which governs required disclosures to plan participants, provides, in relevant part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

A separate statutory provision, 29 U.S.C. § 1133, in conjunction with regulations promulgated by the Secretary of Labor, *see* 29 C.F.R. § 1560.503-1, requires a plan administrator to provide certain documents to claimants against whom an adverse benefits determination has been made. This section's disclosure requirements encompass a broader range of documents than 29 U.S.C. § 1024, which only requires disclosure of documents "under which the plan is established or operated." *See Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 798 (7th Cir. 2009) ("Many items that do not qualify as documents that govern the establishment or operation of a plan for purposes of section 1024(b)(4) may qualify as documents that are relevant to a plan participant's claim for benefits for purposes of section 1133(2) and the Secretary's regulations.") Specifically, if a plan administrator makes an adverse benefits determination, the administrator must provide, upon a claimant's request, copies of any "internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making the adverse determination." 29

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

C.F.R. § 1560.503-1(g)(1)(v)(A).  When a claimant appeals an adverse benefit determination, the plan must provide the claimant "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 1560.503-1(h)(2)(iii).  A document, record, or other information is considered "relevant to" a claim for benefits if the document, record, or information

> (i)     Was relied upon in making the benefit determination;
>
> (ii)    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or]
>
> (iii)   Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination[.]

29 C.F.R. § 1560.503-1(m)(8)(i)-(iii).

ERISA provides a private cause of action against a plan administrator who fails or refuses to comply with a request for information that the administrator is required to furnish. 29 U.S.C. § 1132(c)(1).


**III.   DISCUSSION**

Eden[6] argues that Budco failed to disclosure the required documents pursuant to 29

---

[6] ERISA permits employees and beneficiaries to assign their ERISA rights to a health care provider.  *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374, 1378-9 (9th Cir. 1986).  Eden provides evidence that Ms. Uribe assigned her rights to Eden; this evidence includes the Assignment of Benefits and Rights signed by Ms. Uribe.  Additionally, Budco, in its correspondence with Eden regarding Eden's appeal, acknowledges that it received the Assignment in prior correspondence and relied on it to permit Eden's appeal.  (Budco's Compendium Exh. 2 at BUDCO010.)  Thus,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

U.S.C. § 1024(b) and "other information relevant to" Ms. Uribe's claim for benefits
pursuant to 29 U.S.C. § 1133, 29 C.F.R. § 1560.503-1(h)(2)(iii).

The parties do not dispute that Budco timely produced the SPD, the Administrative
Services Agreement between Budco and Anthem, the Anthem Member Handbook, screen
shots of codes and re-pricing data, and a voice recording of a conversation between Dr.
Reich and an Anthem representative. (SUF ¶ 17.)  The question raised by this motion is
whether these disclosures were adequate under the relevant statutes, or whether Budco
was legally required to produce additional information upon receiving Eden's request.

**A.      Description of Documents Sought by Eden**

Eden points to two sources of information that it believes Budco was required to
disclose.  First, Eden seeks the "internally developed criteria" that Budco referenced in its
April 24, 2009 correspondence with Eden.  In that correspondence, Budco referenced an
excerpt from a Plan document that states,

> Generally, to determine the Maximum Allowable Amount for a Covered Service,
> the Administrator or the Administrator's Subcontractor use, in addition to other
> information, internally developed criteria and industry accepted methodologies and
> fee schedules.

(Eden's Compendium Exh. 7 at EDEN041.)  Second, Eden seeks the fee schedules
pursuant to which the "Maximum Allowable Amount" ("MAA") under the Plan is
established.  Eden argues that Budco relied on this fee schedule in making its benefits
determination, because in Budco's April 24, 2009 letter it stated

> The Maximum Amount Allowable under the Plan for Non-Network Ambulatory
> Surgical Center claims is established pursuant to the Ohio Non-Network

---

Budco's contention that it "does not have sufficient information to evaluate" whether an
assignment occurred, and its contention that "Plaintiff fails to provide evidentiary
support" that the assignment occurred (*see* SGI ¶ 11) is wholly without merit.
Accordingly, Eden has standing to pursue this claim on behalf of Ms. Uribe as the Plan
Participant.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | | Date | May 27, 2010 |
|---|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | | |

Ambulatory Surgical Center fee schedule.  This fee schedule is based on one or more of the factors listed in the Plan language cited above[—industry cost, peer reimbursement, utilization data, previously negotiated rates, and outstanding offers that the Administrator may have made, or other factors the Administrator, on behalf of the Employer, deems appropriate].

(*Id*. at pp. 3-4.)

### B.  Eden is Entitled to the Documents it Seeks Under 29 U.S.C. § 1024(b).

29 U.S.C. § 1024(b) entitles Eden to the "summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  The documents sought by Eden (that have not already been disclosed by Budco) fall within the ambit of this section.   As the Ninth Circuit has noted,

> The relevant documents are those documents that provide individual participants with information about the plan and benefits.  As the legislative history bears out, the documents contemplated by § 104(b)(4) are those that allow "the individual participant [to] know[ ] exactly where he stands with respect to the plan-what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted."  S. Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863.

*Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (finding that a list of plan participants was not subject to disclosure under section 1024(b)(4)).

The documents sought by Eden are "instruments under which the plan is established or operated."   Where, as here, a plan states that it relies upon certain instruments to determine what claims and amounts are reimbursable under the plan, those instruments can be said to "govern" (or restrict) the operation of the plan.  *Accord, Mondry v. Am. Family Mut. Ins. Co.*, *supra*, 557 F.3d at 801 ("[W]hen a claims

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|

| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. |
|---|---|

administrator expressly cites an internal document and treats that document as the equivalent of plan language in ruling on a participant's entitlement to benefits, the administrator renders that document one that in effect governs the operation of the plan for purposes of section 1024(b)(4), and production of that document is required."). Unlike the names and addresses of plan participants, which the claimant in *Hughes* sought, but which "provide[d] participants with absolutely no information whatsoever about the plan," *Hughes*, *supra*, 72 F.3d at 689, here the fee schedule and information pursuant to which the fee schedule is established *do* provide participants with information on how benefits are calculated.

The Court is mindful of the restrictive interpretation of section 1024(b)(4) that the Ninth Circuit has adopted. *See Hughes*, *supra*, 72 F.3d at 691 (noting that the phrase "'other instruments under which the plan is established or operated' is limited to documents that are similar in nature to the documents specifically listed in § 104(b)(4)."); *Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003) (finding that itemized lists of a pension fund's expenditures did not fall within the narrow class of documents specified by section 1024(b)(4) because they "relate[d] *only* to the manner in which the plan is operated . . .") (emphasis added). It is true that the fee schedule and "other internally developed criteria" that Eden seeks do relate to the manner in which the plan is operated. However, unlike the list of itemized expenditures at issue in *Shaver*, they also "restrict or govern the plan's operation," and "'provide individual participants with information about the plan and benefits.'" *Id*. (quoting *Hughes, supra*, 72 F.3d at 690.).

Finally, the Court notes that requiring disclosure here gives full effect to the purpose of the statute, which is to let "the individual participant [to] know[ ] exactly where he stands with respect to the plan." S. Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863. The documents sought by Eden are expressly cited by the Plan as criteria that the Administrator uses for determining the Maximum Allowable Amount. Without that information, a participant does not have all of the information he or she needs in order to know how claims are processed and reimbursements are calculated. *Accord*, Dep't of Labor Adv. Op. Letter 96-14a (July 31, 1996) ("[I]t is the view of the Department of Labor that, for purposes of [section 1024(b)(2) and (4)], any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

beneficiary's benefit entitlement under an employee benefit plan would constitute an instrument under which the plan is established or operated, regardless of whether such information is contained in a document designated as the 'plan document.'").

**C.    Eden is Entitled to the Documents it Seeks Under 29 U.S.C. § 1133(2), 29 C.F.R. 2560-503-1.**

The documents sought by Eden are also subject to disclosure under 29 U.S.C. § 1133(2) as implemented by 29 C.F.R. 2560.503-1.  They clearly are "relevant to" Uribe's claims for benefits because they were "relied on" and "considered . . . in the course of making the benefit determination."  29 C.F.R. § 1560.503-1(m)(8)(i) and (ii).  In its April 24, 2009 letter to Eden, Budco explained how it determined the amount that Ms. Uribe would be reimbursed.  It quoted the part of the "Plan Document" entitled "How Benefits Are Paid: Maximum Allowable Amount," which states that the Maximum Allowable Amount "is the lesser of the Non-Network Provider's facility charge, or an amount determined by the Administrator, after consideration of any one or more of the following: industry cost, peer reimbursement, utilization data, previously negotiated rates, outstanding offers that the Administrator may have made, or other factors the Administrator, on behalf of the Employer, deems appropriate."  (Budco's Compendium, Exh. 2.)  Later in that letter, Budco confirmed that the MAA was "established pursuant to the Ohio Non-Network Ambulatory Surgical Center fee schedule."  This schedule is "based on one or more of the [previously cited factors]."  (*Id.*)

Notably, Budco's Opposition to the present motion barely discusses whether it is required to disclose the documents sought by Eden pursuant to 29 C.F.R. 2560-503-1. Budco devotes the majority of its Opposition to arguing that it complied with section 1024(b), and goes on to state in conclusory fashion that "Budco has provided all [documents "relevant to" the claim pursuant to 29 C.F.R. 2560-503-1,] including the screen shots that identify the basis for the payment amounts made to Eden."  (Opp'n at 9.)

Budco then goes on to argue that even if the documents sought by Eden were subject to disclosure to Eden under the regulations, no penalty is warranted.  The Court finds that the documents sought by Eden were subject to disclosure under 29 U.S.C. § 1133, 29 C.F.R. 2560-503-1, and will address the issue of penalties in the next section.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | | Date | May 27, 2010 |
|---|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | | |

**D.      The Court Declines to Impose Penalties on Budco.**

Pursuant to 29 U.S.C. § 1132(c)(1),

> Any [plan] administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $[110][7] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

This subsection applies to noncompliance with both 29 U.S.C. § 1024(b) and § 1133(2), which are part of the same subchapter.  *See Teen Help, Inc. v. Operating Engineers Health and Welfare Trust Fund*, 1999 WL 1069756 *5 (N.D. Cal. Aug. 24, 1999) (noting that both 29 U.S.C. § 1133(2) and § 1024(b)(4) obligate administrators to disclose requested documents and are part of the same subchapter of ERISA as 29 U.S.C. § 1132(c)(1), and therefore, "[f]ailure to comply with requests for information pursuant to those provisions . . . subjects the [plan administrator] to the penalties described in section 1132(c)(1).").

In *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 90 (2d Cir. 2001), the court listed as among the considerations to be assessed in determining whether to impose penalties "various factors, including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary."  "Although neither prejudice nor injury are prerequisites to an award of sanctions pursuant to section 1132(c)(1), these are factors the court may consider [in] deciding whether to exercise its discretion to award a penalty."  *Teen Help*, *supra*, 1999 WL 1069756 * 5 (citing *Moorhart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994).  The burden is on the plaintiff to show that he has been prejudiced by the plan administrator's refusal to turn over documents.  Additionally, "the court may also consider evidence that the plan acted in

---

[7] By regulation, the maximum permissible penalty was increased from $100 to $110 per day. 29 C.F.R. § 2575.512c-3.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

bad faith." *Id.*

The Court declines to impose penalties on Budco for the following reasons.

First, the Court notes that Eden's demands were less than crystal clear, especially with respect to its demand for the "internal criteria" and other information pursuant to which the fee schedules were established. The most concrete reference to these documents was in the April 30, 2009 letter, in which Dr. Reich (on behalf of Eden) stated that Eden was seeking "[t]he specific methodology used in calculating benefits with respect to the claims at issue . . ." (Budco's Compendium Exh. 3 at p. 3.)

Additionally, it was only on April 30, 2009 that Eden specified that it was seeking the "database and fee schedule" that Anthem used to determine the benefits payable to Ms. Uribe, and the criteria and information pursuant to which that schedule was established. Thus, any statutory penalties would not begin to accrue until May 31, 2009—four days before Eden filed this lawsuit. In none of Eden's subsequent letters did it specify the documents it was seeking; rather, Dr. Reich (on Eden's behalf) simply reiterated his demands that Budco provide "the information, documents and records that it is required to produce" under the relevant statutes. (*See* Budco's Compendium Exh. 5 at p. 1, letter dated May 12, 2009.)

Second, Eden has not pointed to any prejudice or injury it suffered due to Budco's refusal to timely produce required documents. There is no dispute that Budco provided Eden with a number of core documents. In Eden's initial March 24, 2009 written request, it specified only the Summary Plan Description, the "complete and master Plan Document," "any contract between BCBSO and any relevant claims subsidiary," and "any specific charge index data bases created from statistical gatherings utilized in creating adverse benefit determination of the instant claim." (Budco's Compendium, Exh. 1 at 4.)  Eden does not claim that Budco refused to provide these documents. When Eden specifically demanded additional documents (including the "database and fee scheduled used by BCBSO in reaching the adverse benefit determination" and the "specific methodology used in calculating benefits with respect to the claims at issue"), Budco responded with screen shots that (purported) to show which pricing group Ms. Uribe's claim fell within. Six days later, Eden filed this lawsuit. Whether the precise documents that Eden sought and Budco refused to provide were within the scope of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | | Date | May 27, 2010 |
| --- | --- | --- | --- | --- |
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | | |

ERISA's disclosure provisions had not been previously addressed by any authority to which the parties have cited or which this Court has been able to locate.   Under such circumstances, an award of penalties is not appropriate.  *See Teen Help, supra*, 1999 WL 1069756 * 5 (noting that "[i]n close cases, it is not unreasonable for the plan administrator to seek a court determination whether it was required to disclose the documents," and declining to award penalties against plan administrator who had failed to disclose documents under 29 U.S.C. § 1133).[8]

Finally, the Court notes that Dr. Reich's conduct in making the demands on Eden's behalf that led up to the filing of this lawsuit was, as this Court has previously described in a case on analogous facts, "unnecessarily adversarial."  *Reich v. Universal Studios, Inc. Basic Medical Plan*, CV99-1254-AHM, slip. op. at 5-8 (C.D. Cal. May 17, 1999) (attached to Eden's RJN as Exhibit "B").[9]  Every one of Eden's letters, starting with the first demand for documents on March 24, 2009, hinted (if not outright stated) that Eden was prepared to take Budco to court if Budco failed to provide Eden with every document it sought.   Rather than providing more specificity as to the documents it was seeking, Eden's follow-up letters simply reiterated its demand for documents and informed Budco that it was subject to statutory penalties for failing to comply.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Eden's Motion for Summary Judgment, but awards Eden no statutory penalties.  The Court hereby orders Budco to provide Eden with the following, within 14 days of this Order:

---

[8] In *Teen Help*, an authorized representative of the plan beneficiary sued the plan administrator for refusing to turn over plan documents after the representative sought them on the beneficiary's behalf.

[9] The Court also notes that Reich and/or Eden have been plaintiffs in at least forty ERISA cases since 1995, with fifteen filed in 2009 alone.  *See* Opp'n at 13 fn. 9 (collecting cases).  While the Court would never penalize litigants for asserting their rights, it does question why these plaintiffs have been unable to determine where they stand with respect to so many plans without resorting to litigation.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3991 AHM (Ex) | Date | May 27, 2010 |
|---|---|---|---|
| Title | EDEN SURGICAL CENTER v. BUDCO GROUP, INC. | | |

    (1)    The data base and fee scheduled used by BCBSO in reaching the adverse benefit determination issued to Ms. Uribe;[10] and

    (2)    The methodology and any internally developed criteria cited in the Plan Document that Budco used to calculate benefits with respect to Ms. Uribe's claim.

Eden also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), which permits, in the Court's discretion, recovery of "a reasonable attorney's fee and costs of action to either party."  Because Eden prevailed on the merits, and because Budco has not filed an opposition to Eden's request for attorneys' fees, the Court intends to award Eden *reasonable* attorneys' fees.  The parties are instructed to meet-and-confer and attempt to agree on an appropriate amount of attorneys' fees.  If the parties do not resolve the amount of attorneys' fees by June 10, 2010, the parties must file a proposed briefing schedule for Eden's motion for attorneys' fees.  The Court reserves the right to impose sanctions on any party or counsel who acts unreasonably in this matter and thereby forces the Court to devote more time to this dispute.

Within five days of the date of this Order, Plaintiff shall submit a [Proposed] Judgment.

No hearing is necessary.  Fed. R. Civ. P. 78; L. R. 7-15.

                                                  :

Initials of Preparer        SMO

---

[10] Budco must produce the database and fee schedule, notwithstanding the fact that they may not be in Budco's control, as Budco argues.  *See Sgro v. Danone Waters of North America, Inc.*, 532 F.3d 940, 945 (9th Cir. 2008) ("Where . . . a third party makes the benefit determination, the administrator may not have the needed documents on hand, so it will have to get them from the third party.").